Yes, thank you, Your Honor. Good morning, Your Honors, and may it please the Court. My name is Aaron Morrison and I represent the petitioner in this matter. I'd like to reserve three minutes of my time for rebuttal. I'll try to help you. Thank you. This case involves an appeal of an immigration judge's decision affirming an asylum officer's negative reasonable fear determination. And the primary, the number one, whether the immigration judge applied the correct legal standard in determining whether or not the petitioner established a reasonable possibility of torture, if removed. Number two, the issue is whether or not the immigration judge properly considered the proposed social groups articulated by petitioner during his reasonable fear proceedings. And I would submit that the both questions. Let me ask you this about the first question, please. Well, let's assume that we agree with you that the wrong standard was used, or at least both of the standards were referred to and there was some ambiguity. At the end of the day, didn't the agency conclude, the IJ in this case, conclude that it didn't really matter which standard you used, your client loses because the claim was speculative. Does it make any difference if we were to send this back if, unless it's on an open record, isn't he still faced with the fact that the IJ thinks the claim was speculative? Well, with all due respect, I think I would disagree with with that assertion, your honor. These are, as this court has recognized, particularly in Alvarado, Herrera, v. Garland, reasonable fear proceedings, that is the immigration judge's review of an asylum officer's prior determination. These are very streamlined proceedings. And the primary purpose of a hearing like this is for the immigration judge to screen out frivolous claims. And it's not a full blown trial. It's not a full blown merits hearing. And the issues that your honor is pointing out, those can be more fully developed in the course of withholding only proceedings where there's time to develop the record as far as country conditions, there's time to perhaps get expert testimony. And that's the primary problem with the way the immigration judge handled the hearing in this case. Because in the context of a streamlined hearing like this, a petitioner that is an applicant in a case like this just doesn't have the time nor the resources to develop the record to such an extent that he's going to prevail, ultimately, for the protection he's seeking. What standard do we use to evaluate the propriety of the IJ's order? I believe, I believe it's a substantial evidence review, I believe. What if we took it up to de novo and say the IJ cited two different standards and we're going to use the proper one, which is a 10% likelihood, and make determination based on what was said below, whether or not the IJ was correct in issuing the order that he did. I still think that he would prevail as far as the torture aspect of his claim is concerned. But he wouldn't prevail on the outcome of your first issue because we would just take that off the table and say we're going to look at it as a 10%, not a 50% question, correct? Well, if I'm understanding you correctly, your honor, you're asking what the outcome would be if you review the case and apply the correct legal standard, the 10%? Because the IJ, for whatever reason, cited two standards and the best you can say is that we don't know which one he applied. Why don't we just say we'll use the 10% de novo, give you the benefit of the doubt of the higher standard of review, and determine whether or not he was right or wrong under that particular standard. Well, I think if the court... Because the order is unclear at best. You could argue it's clear and then he used the 10% standard, but let's give you the benefit of the doubt and say it's unclear. And he used the 50% standard. Why don't we just take it off the table and apply a de novo standard to review that question? Well, if the court were to do that, then I think that he would prevail if the court is going to apply de novo standard. You go to question two, whether or not his evidence or whether what he said in the administrative proceeding was speculative or not. Correct. You would evaluate the claim on the merits as far as... Right. How do you deal with the finding that the applicant lives safely in a different part of El Salvador for a period of four years? He cannot therefore establish he could not safely relocate. That's not something that it appears your brief discusses at all. Why doesn't that doom any claim? Well, assuming again, we were faced with the ambiguity in the record as to which standard of proof the immigration judge applied. Doesn't that doom any claim under any standard if you can safely relocate? Well, no, with all due respect, I would disagree, Your Honor. That is certainly one factor that the court can consider as far as whether or not he's met his burden of proof. But it's not dispositive. And in fact, why isn't it dispositive? Because relocation is not an actual statutory. It's not an actual statutory element as far as CAT is concerned. It's one factor that the... Why doesn't it stand as a fact that makes it impossible to conclude even by the more likely than not standard when that applies on the merits, let alone the 10 or even the 10 percent standard? If you've lived safely elsewhere for four years, what evidence can you point to to say, but I'm at risk of torture? Well, I mean, his testimony was that the MS-13 had, will retaliate against him because of his perceived familial ties to a police officer. And that is... Did he have those ties during the four years he lived elsewhere? Yes. What's changed? Do you want to save the balance of your time? Of course, my colleagues can ask any questions they want, but do you want to balance your time? I would. Yes. OK. All right. Ms. Pratt for the attorney general, please. Yes. Good morning, your honors. May it please the court. Cherise Pratt for the respondent, Merrick Garland. Your honors, the petitioner testified before the asylum officer and before the immigration officer that he lived safely in Dulce Nombre from 2012, actually, to 2019. He said, I've never had any problems. And that's on page 28 of the record. And we would argue that any error is tangential when you look at the 36 pages of transcript and how the immigration judge repeatedly repeated the standard and explained the process, the reasonable fear process to the petitioner. And you agree, don't you, Ms. Pratt, that the IJ unnecessarily cited the 50 percent standard? Yes, he unnecessarily cited that standard. And that's not that's not correct. The petitioner did not have to show more than 50 percent likelihood that he suffered persecution. He only had to show he suffered more than 10 percent likelihood of persecution to succeed here. Correct? Yes, that is correct. And so then the question is the one that Judge Clifton asked, which is whether or not the balance of the evidence in the seven year safe living duration amounts to more than 10 percent likelihood. That's what we should look at. Is that true? The government would say, yes, you should look at the fact that from 2012 to 2019, he said he lived with and he never had any problems in Dulce Nombre. Now, ordinarily, the government in immigration cases is pretty aggressive and insisting that it's not for us to fill in the blank if the agency hasn't applied the right standard. Going back to Ventura in the 90s, the Supreme Court said, no, even if you think as a matter of law, there's no alternative. You're supposed to send it back to the agency.  Because reviewing the decision on page two, if you read it in tandem, the immigration judge first checked the box that he has not established a reasonable possibility that he would be persecuted. And then he elaborated below, respondent has not shown a nexus to a protected ground. He didn't say it again all over again. Well, what else did he say there? Keep reading. And then and then the second part, the torture part, he says in the first paragraph, he has not shown a reasonable possibility that he would be tortured. And then he elaborated. He has not shown that it is more likely than that. But you could stop. Stop right there. And what regulations are cited at that point? The regulations applicable to a reasonable fear interview or the applicant, the regulations appropriate for adjudication on the merits. Right. The incorrect. I mean, I just don't think you can erase what's on the page. We've only got a couple of pages with anything on them. And so you've acknowledged that the IJ appears to have applied the wrong standard. So my question to you is, what authority do we have to do the work that he didn't do by applying the right standard? It doesn't it doesn't look like he applied the wrong he cited the wrong standard, but it doesn't look like he applied the wrong standard. When you look at all of the 36 pages of transcript and he repeatedly on page eight, nine, 10, 15, 20, 22, explain the proper standard throughout the whole immigration proceedings and reiterate the Supreme Court reviews what we do. They look at our disposition. They don't look to see where the court might have suggested something else during oral argument. We've got a disposition that's very short. It cites the wrong standard. It cites the wrong regulation. How do we get around that? So, again, any error was tangential when you look at the merits, when you see Bartolomeu says when who looks at the merits, when who looks at the merits, you're asking us to make that evaluation. And what authority do we have to make that evaluation? The merits of the decision. So I'm saying if you look at Bartolomeu, it says speculation on what could occur is not enough to establish a reasonable fear. That's that's the whole basis for the IJs. Look at his reasoning. He is limited to what was put forth at the with in front of the asylum officer. The asylum offer, the asylum officer applied the correct standard. The IJ is only reviewing the asylum officers. With respect, I don't think you've answered Judge Bifton's question at all. He pointed out that the citation to the regulation done by the IJ was to the wrong standard. He has also reminded you that the Supreme Court has said in these kinds of cases where the wrong standard is applied, we've got to send it back. Now, the government may ultimately win without any problem because of the relocation and so on. But what can you cite? What cases can you cite that contravene what Judge Clifton has said with respect to the instructions to us in this kind of a case? Maybe I would just suggest that it's harmless error and it would be futile when you look at the reasoning that he did cite the incorrect language there. In that sense, you have to have any any case that would buttress your point that when you contravened by a harmless error standard, do you have any case that says that? Not not in front of me. I'm sorry, Your Honor. Are you aware of any, even if you don't have in front of you, you've ever heard of one? Yes, yes. There have been cases where you don't remand it because it's a tangential error and remand would be futile. So can you can you send us a 28-J letter then right after we're done here that would say that even if the agency, in this case the IJ, applied the wrong standard and even though the Supreme Court says in that case we have to send it back, that it's harmless error if, as you claim occurs in this case, the agency cited the correct standard and the correct facts in multiple other pages. Can you send us such case or cases right away? I can do some research and see if there are any. OK, if there isn't, you agree that you lose on that point, do you not? Right. If if if if we're bound by that Supreme Court decision, then yes, then I would lose on that. So we'll look forward to getting your 28-J letter on that point. Thank you. You have other argument you want to make? No, I would rest on the brief, thank you. OK. Do either of my colleagues have additional questions for Ms. Pratt? OK, Mr. Morrison, you have a little time left to rebut. Do you have any rebuttal you want to issue? Your mic is on, your mute is on, sorry. Sorry about that. Yes, Your Honor, I would point out to the brief, I'm sorry, to the case that we raised the Ashcroft where the court in a similar situation remanded it back to the agency where the incorrect legal standard in a CAT case was not applied by the immigration judge and the BIA. So I would submit that at a minimum, given given the record that we have here, where in two out of three places, the judge cites the incorrect legal standard with respect to CAT protection, I would submit that at a minimum, this court has to remand it back to the immigration judge to apply the appropriate legal standard. Let's let's take your point. Let's if if we agree that we're required to do that and if we also believe that it is totally useless because the IJ has found that he has lived, I think the government just suggested that he might have lived elsewhere for almost seven years. But whether it's seven years or four years, if he lived elsewhere without any problem, without any issue at all, won't that ultimately defeat your case? Um, I don't know. I mean, it might it might not. But I'm not sure that that's an issue that necessarily is before the court. I'm just asking practically, you're you're I'm sure a fine lawyer, you want to help your client. But if this is a quixotic venture, you may like windmills. But this one looks like it's turning and turning rather slowly. Well, this is in regards to the CAT claim. I certainly understand where, you know, the court's concern here with respect to the ultimate prospects for relief in this case. I don't necessarily share that opinion. It certainly may not be the strongest claim, but he deserves to have the appropriate law applied in this case, nevertheless. OK, all right. Your time is used. Let me ask whether either colleague has additional questions for Mr. Morrison. I think not. So we thank both counsel for your argument in this case. The case of Vasquez Ardon versus Garland is submitted and we wish you both a good day. Thank you.
judges: CLIFTON, SMITH, Murphy